```
IN THE UNITED STATES DISTRICT COURT
  FOR THE WESTERN DISTRICT OF TENNESSEE
            WESTERN DIVISION
```

_____

| | |
|---|---|
| **WALTER MCGHEE, II,** | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 15-cv-2023-JPM-tmp |
| | ) |
| **ROBERT LIPSCOMB, et al.,** | ) |
| | ) |
|     Defendants. | ) |

_____

### REPORT AND RECOMMENDATION
_____

On January 13, 2015, plaintiff Walter McGhee, II, proceeding *pro se*, filed a complaint against Robert Lipscomb, the Executive Director of the Memphis Housing Authority ("MHA"); MHA Commissioners Rickey E. Wilkins, Dr. Elma H. Mardis, Mark Jones, Vatricia A. McKinney, Ian L. Rudolph, and William E. Stemmier; Marshall Lewis, the Director of the Department of Housing and Urban Development ("HUD") in Memphis; the property manager and secretary of Kimball Cabana Apartments Joyce Alana and Rick Runious; and "property owners" of Kimball Cabana Apartments. (ECF No. 1.) McGhee's complaint was accompanied by an application seeking leave to proceed *in forma pauperis*. (ECF No. 2.) On January 23, 2015, the court granted the *in forma pauperis* application. Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States

Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate.

For the reasons below, it is recommended that McGhee's federal claims be dismissed for failure to state a claim pursuant to Rule 12(b)(6) and 28 U.S.C. § 1915(e)(2) as to all the defendants, and that the court decline jurisdiction over the remaining state law claims based on 28 U.S.C. § 1367(c)(3).

## I. PROPOSED FINDINGS OF FACT

In McGhee's complaint, titled "Civil Rights and Retaliation Claim," he alleges violations of his civil rights in connection with the MHA's decision in October 2013 to terminate his participation in the Housing Choice Voucher ("HCV") Program. McGhee attaches to his complaint a letter dated January 14, 2014, from MHA, which describes in detail the termination and eventual reinstatement of his participation in the HCV program. Specifically, the letter in its entirety provides as follows:

> **RE: NOTICE OF INFORMAL HEARING DECISION AND REINSTATEMENT TO THE HOUSING CHOICE VOUCHER PROGRAM**
>
> Dear Mr. McGhee,
>
> Please be advised of the final decision regarding your termination from the Housing Choice Voucher (HCV) Program. Based on the evidence presented at the informal hearing conducted on December 20, 2013 your termination from the program has been reversed.
>
> **Notice of Intent to Terminate and Request for Hearing**
>
> On October 9, 2013, Memphis Housing Authority [MHA] sent you a letter informing you that your

participation in the HCV Program was being terminated because you violated a term of the Program's Statement of Family Obligations, specifically, Obligations #14, #15, and #16, which state, respectively, that the family must notify MHA in writing within 24 hours of disconnected utility service, the family must pay utility bills, and the family must supply true and complete information. In response to this letter, you requested an informal hearing to review your termination from the HCV Program. On December 14, 2013, MHA informed you by letter that your request had been granted and advising you that a hearing had been scheduled for Friday, December 20, 2013 at 10:30 a.m. to review your termination. A hearing took place on December 20, 2013 before the undersigned hearing officer.

**Evidence Presented by MHA**

During the course of the hearing, MHA presented evidence that your unit failed an inspection because MHA was unable to gain access to the unit and the unit did not have utilities. MHA provided a copy of a HCVP inspection sheet dated September 18, 2013 indicating that the inspector was unable to gain access to the unit and that the unit did not have power. On the form the inspector indicated that MHA would return for a second inspection on September 26, 2013. MHA also furnished a copy of a letter labeled "Declaration of Walter McGhee, II," dated October 28, 2013. In this letter you admit to voluntarily cutting off your utilities as a way to protest the maintenance staff of your apartment complex stealing your belongings.

**Evidence Presented by Mr. McGhee**

When you requested a hearing, you submitted a letter to MHA labeled "Declaration of Walter McGhee, II" in which you explain the actions that led to your termination. During the hearing, you testified to the contents of this letter. You testified that your [sic] had several break-ins at your apartment, and that you believed the maintenance staff of your apartment complex was responsible for them. You stated that you filed a police report for the break-ins, and

provided a report number as well as the name and number of Sergeant Johnson of the Burglary Division of the Memphis Police Department. You testified that during their inspection the police noted that there was no forcible entry to the unit, and thus you believed that the maintenance staff was the offender. Further, you contended that by MHA giving you an annual recertification on October 1, 2013, after becoming aware of your utilities being terminated, MHA constructively waived the violation.

**<u>Pertinent Legal Authority</u>**

24 C.F.R. § 982.551, entitled "Obligations of participant," sets forth the obligations of a family participating in the Housing Choice Voucher Program. Pursuant to 24 C.F.R. § 982.551:
>    (b) Supplying required information.
>       (1)The family must supply any information that the [MHA] determines is necessary in the administration of the program . . . "Information" includes any requested certification, release or other documentation.

Further, pursuant to 24 C.F.R. § 982.552, entitled "[MHA] denial or termination of assista11ce for family," MHA may terminate a participant's housing voucher under certain circumstances, including that participant's violation of any family obligations:
>    (c) Authority to deny or terminate assistance
>       (1) *Grounds for denial or termination of assistance.* The [MHA] may at any time deny program assistance for an applicant, or terminate program assistance for a participant, for any of the following grounds:
>
>          (i) If the family violates any family obligations under the program.

Additionally, the Housing Choice Voucher Program Statement of Family Obligations, which Mr. McGhee most recently signed on October 1, 2012, includes the following Obligations:

>    The family must:

14. Notify MHA in writing within 24 hours of disconnected utility service.
15. Pay utility bills.
16. Supply true and complete information,

Once MHA discovers that a participant has violated an obligation or rule of the HCV Program, it may, in certain circumstances, have the right to terminate that participant's housing assistance.
After notice of termination, participants have the opportunity to request an informal hearing to review their termination. At the informal hearing, a third party decision-maker assesses the facts of the case and the pertinent legal authority to determine whether MHA has met its burden of proof and if the termination was proper. However, 24 C.F.R. 982 §982.552(c)(2), entitled "[MHA] discretion to consider circumstances" states:

> In determining whether to deny or terminate assistance because of action or failure to act by members of the family:
>
> (i) [MHA] has discretion to consider all of the circumstances in each case, including the seriousness of the case, the extent of the participation or culpability of the individual family members, mitigating circumstances related to the disability of a family member, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure.

Similarly, MHA's Administrative Plan provides:

> In deciding whether to deny or terminate assistance because of action or failure to act by members of the family, MHA will consider all of the circumstances of the case, including the seriousness of the case, the extent of participation or culpability of individual family members, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure.

> **Decision**
>
> After hearing the evidence presented by both parties and reviewing the facts of the case, the undersigned hearing officer is of the opinion that Mr. McGhee should be reinstated to the Housing Choice Voucher Program. While he did violate several of the program obligations, the facts surrounding his situation are unique and should be given consideration. In handling the termination of your participation in the Housing Choice Voucher Program, MHA followed those procedures required by HUD and by MHA's Administrative Plan.
>
> For the reasons stated above, your termination from the Housing Choice Voucher Program has been reversed.

(ECF No. 1-3.)

McGhee further alleges that during the time that he was not allowed to enter his apartment, employees of the apartment complex stole items from his apartment. (Compl. at 6.) He claims that the apartment complex employees prevented him from entering his apartment to retrieve his belongings on at least four occasions. (Compl. at 6–7.) Further, McGhee alleges that his retroactive rent payments and his security deposit were used to fix the apartment without his knowledge while the decision to reinstate him to the HCV program was pending. (Compl. at 8.)

McGhee also alleges that he was originally evicted from his apartment for discriminatory reasons based on his race, gender, and disability as well as in retaliation for "these particular issues" (which appears to mean retaliation for turning off his utilities). (Compl. at 2.) McGhee brings claims for violations

of his Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 and violations of the Fair Housing Act ("FHA"). (Compl. at 2-3.) He also seeks damages for property that was allegedly stolen during the time that he could not enter his apartment, which the court construes as a conversion claim. (Compl. at 6.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action:

> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C § 1915(e)(2)(B)(i-iii). In assessing whether a complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegation in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383

(6th Cir. 2011) (quoting Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n. 3 ("Rule 8(a)(2) still requires a 'showing', rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempted from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out his pleading.") (internal quotation marks omitted); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require

courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

**B.    § 1983 Claims**

"Section 1983 creates a federal cause of action against state and local officials who, while acting under the color of state law, deprive an individual of a right secured to him by the Constitution or federal law." Caswell v. City of Detroit Housing Comm'n, 418 F.3d 615, 618 (6th Cir. 2005). To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970), superseded, abrogated, and overruled on other grounds by Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). To avoid dismissal for a § 1983 claim, "a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003) (citing Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003)).

As an initial matter, "[a] § 1983 Plaintiff may not sue purely private parties." Brotherton v. Cleveland, 173 F.3d 552, 567 (6th Cir. 1999). Thus, "[i]n order to be subject to suit under § 1983, [a private] defendant's actions must be fairly attributable to the state." Collyer v. Darling, 98 F.3d 211, 231-32 (6th Cir. 1997) (citing Lugar v. Edmonson Oil Co., Inc., 457 U.S. 922, 936 (1982). Therefore, any § 1983 claim against Kimball Cabana Apartments and its owners or employees must fail as they are purely private parties. Additionally, as a federal employee, the Memphis Director of HUD cannot be subject to suit under § 1983. See Williams v. City of Memphis, No. 14-2767-JDT-tmp, 2015 WL 808456, at *6 (W.D. Tenn. Feb. 25, 2015) (citing Smith v. Breen, No. 09-2770-STA-tmp, 2010 WL 2557447, at *7 n.14 (W.D. Tenn. June 21, 2010)) ("[F]ederal agencies and employees act under color of federal law and, therefore, are not subject to suit under § 1983."); Habtemariam v. Adrian, No. 98-3112, 1999 WL 455326, at *2 (6th Cir. June 23, 1999) (finding that a § 1983 claim against HUD could not survive motion to dismiss because "HUD is a federal agency, and not a person acting under color of state law"); see also Franklin v. Henderson, No. 00-4611, 2000 WL 861697, at *1 (6th Cir. June 20, 2001) (citing Ana Leon T. v. Fed. Reserve Bank, 823 F.2d 928, 931 (6th Cir. 1987)) ("The federal government and its officials are not subject to suit under 42 U.S.C. § 1983.").

The court construes McGhee's complaint as also bringing claims against the MHA Commissioners in both their individual and official capacities. As to McGhee's claims against the MHA Commissioners in their individual capacities, McGhee has alleged no facts in his complaint that identify any actions taken by any specific MHA defendant. Without factual support to show a plausible basis for liability on the part of the MHA Commissioners, McGhee's § 1983 claims against the MHA defendants in their individual capacities cannot survive.

As to McGhee's claims against the MHA defendants in their official capacities, "[i]t is well-established that a suit against a person in his or her official capacity is construed as a suit against the governmental entity which he or she represents." Williams, 2015 WL 808456, at *5; see also Alkire v. Irving, 330 F.3d 802, 810 (6th Cir. 2003) ("While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent."). Therefore, the court will construe McGhee's claims against the MHA defendants in their official capacities as a suit against the MHA itself. See Evans v. Hous. Auth. of City of Raleigh, N.C., No. 5:04-CV-291-FL(3), 2007 WL 5273736, at *9 (E.D.N.C. Nov. 28, 2007) ("In

addition, since at least 1973, actions by public housing authorities were held to be under color of law.").

Construing the complaint liberally, it appears that McGhee is alleging that his due process rights under the Fourteenth Amendment were violated when MHA terminated his participation in the HCV program. The Fourteenth Amendment prohibits governmental deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Courts separate claims alleging deprivation of due process into two categories: violations of substantive due process and violations of procedural due process. Midkiff v. Adams Cnty. Reg'l Water Dist., 409 F.3d 758, 762 (6th Cir. 2005) (citations omitted); see also Charles v. Baesler, 910 F.2d 1349, 1353 (6th Cir. 1990) ("Due process may impose either substantive or procedural limitations upon a particular deprivation"). "Procedural due process is traditionally viewed as the requirement that the government provide a fair procedure when depriving someone of life, liberty, or property; substantive due process protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." EJS Props., LLC v. City of Toledo, 698 F.3d 845, 855 (6th Cir. 2012) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)) (internal quotation marks omitted).

A procedural due process claim involves a two-part analysis: "First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment. Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened notions of due process." Midkiff, 409 F.3d at 762-63; see also Thomas v. Cohen, 304 F.3d 563, 576 (6th Cir. 2002). "Substantive due process claims, in comparison, serve[ ] as a vehicle to limit various aspects of potentially oppressive government action." Handy-Clay v. City of Memphis, 695 F.3d 531, 546–47 (6th Cir. 2012) (quoting Howard v. Grinage, 82 F.3d 1343, 1349 (6th Cir. 1996)) (internal quotation marks omitted). "They often fall into one of two categories — claims that an individual has been deprived of a particular constitutional guarantee, or claims that the government has acted in a way that 'shock[s] the conscience.'" Id. at 547 (quoting Valot v. Se. Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1228 (6th Cir. 1997) (citations omitted)). "Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest." Id. (quoting Valot, 107 F.3d at 1228) (internal quotation marks omitted).

The complaint fails to state claim for either substantive or procedural due process violations. Regarding substantive due process, the complaint contains no allegations that MHA deprived McGhee of any constitutional guarantee or that MHA's action would arise to the level of "shocking the conscience." Regarding procedural due process, "a § 1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a 'random and unauthorized act' and that available state remedies would not adequately compensate for the loss." Macene v. MJW, Inc., 951 F.2d 700, 706 (6th Cir. 1991). Even assuming, *arguendo,* that the complaint sufficiently alleges the existence of a protected property interest in a government service, see Midkiff*,* 409 F.3d at 762, McGhee has not alleged that MHA has an established procedure that itself violates due process, or that MHA failed to provide him with notice and a fair procedure to challenge the decision to terminate his participation in the HCV program. In fact, the January 2014 letter attached to McGhee's complaint describes in detail the procedural steps taken by MHA in deciding to terminate McGhee's participation in the HCV program for failure to fulfill his obligation to maintain utility services at his residence, as

well as its decision to reinstate him. Because the facts as alleged by McGhee offer no indication of any plausible entitlement to relief on a due process claim, it is recommended that all of McGhee's § 1983 claims be dismissed for failure to state a claim. See Smith v. Memphis Light, Gas, & Water, No. 13-2098-JDT-TMP, 2013 WL 5874715, at *6 (W.D. Tenn. Oct. 30, 2013).

**C. FHA Claims**

McGhee alleges that he did not enjoy fair housing practices based on his "perceived disability, disability, race and sex," which appears to be a complaint for violations of the FHA. (Compl. at 2.) The FHA makes it unlawful to discriminate in the sale or rental of a dwelling because of race, color, sex, or disability. 42 U.S.C. § 3604. To satisfy the pleading standard, McGhee must "provide a short and plain statement of the claim that gives the defendant fair notice of what [his] claim is and the grounds upon which it rests [that would] withstand a motion to dismiss . . . ." Guevara v. UMH Props., Inc., No. 2:11-cv-2339-SHL-tmp, 2014 WL 5488918, at *3 (W.D. Tenn. Oct. 19, 2014). McGhee does not have to allege every element of a *prima facie* case of housing discrimination to satisfy the pleading standard under Federal Rule of Civil Procedure 8 and the Supreme Court's holdings in Twombly and Iqbal. Id. McGhee need allege only "the statutory basis for

[his] claims, and the factual predicate of those claims, such that the defendants are apprised of the claims and the grounds upon which they rest." Id. However, McGhee has provided no facts in his complaint that plausibly suggest an entitlement to relief. While McGhee states that he believes his alleged mistreatment was based on his race, sex, and/or disability, he does not support that belief with any facts to demonstrate the grounds upon which that belief rests. McGhee's conclusory legal statement that he has been discriminated against fails to meet the pleading standard set forth in Twombly and Iqbal. Therefore, it is recommended that McGhee's FHA claims be dismissed for failure to state a claim.

**D. State-Law Conversion Claim**

The court has determined that every federal claim asserted by McGhee should be dismissed for failure to state a claim. Without a basis for federal jurisdiction, the court should not exercise supplemental jurisdiction over any state-law claims brought by McGhee. See 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, it is recommended that any state-law claim, such as a conversion claim, be dismissed pursuant to 28 U.S.C. § 1367(c)(3). See Carter v. Collins, No. 15-2011, 2015 WL 474359,

at *5 (W.D. Tenn. Feb. 4, 2015); Hayes v. Shelby Cnty. Tr., 971 F. Supp. 2d 717, 737 (W.D. Tenn. 2013).

### III. RECOMMENDATION

For the reasons above, it is recommended that McGhee's federal claims be dismissed for failure to state a claim pursuant to Rule 12(b)(6) and 28 U.S.C. § 1915(e)(2) as to all the defendants, and that the court decline jurisdiction over the remaining state law claims based on 28 U.S.C. § 1367(c)(3).

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

July 14, 2015
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**